**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JOSEPH C. CAMPBELL,

    Plaintiff,

vs.                                        CASE NO. 3:04-cv-1118-J-TEM

NORTH AMERICAN COMPANY FOR
LIFE AND HEALTH INSURANCE,
a non-resident insurance company,

    Defendant/Counter-Plaintiff,

vs.

JOSEPH C. CAMPBELL, CECEILIA M. LEE, and
JAY F. LEE, JR., J.R.T.L., a minor, and
A.J.L., a minor,

    Counter-Defendants.
_____

## **O R D E R**

This case is before the Court on the single remaining issue of whether attorneys' fees should be awarded to Defendant/Counter-Plaintiff North American Company for Life and Health Insurance (hereinafter, "North American").[1] North American seeks an award of attorneys' fees in excess of $29,600.[2] The claimants to the insurance proceeds, which include all the named Counter-Defendants in this action, have opposed an award of attorneys' fees and costs to North American.

---

[1] The matter concerning interest owed on the unpaid insurance policy proceeds was resolved by the Court's order entered on September 29, 2006 (Doc. #60). Any question as to attorneys' fees of the other parties was resolved under the terms of the signed settlement agreement (see Doc. #44-2, Mediation Settlement Agreement).

[2] The accounting of North American's attorneys' fees was made on February 17, 2006 (Doc. #50).

**Background**

On October 23, 1998, the North American Company for Life and Health Insurance issued a "Renewable Term to 95" life insurance policy, insuring the life of Ms. Donna M. Cain (also known as Donna Campbell) for the face amount of $100,000 (*see* Doc. #4, p.5; Doc. #23-2, Exh. C). Joseph Campbell was named as the beneficiary under the terms of the subject life insurance policy (Doc. #23-2, Exh. C). Subsequent to issuance of the policy, the insured (Donna Cain) and the named beneficiary (Joseph Campell) were married and then later divorced. The subject policy was in full force and effect on July 8, 2004 (Doc. #4, p. 5) when Donna Cain Campbell was killed as the result of an automobile accident on the Mathews Bridge in Jacksonville, Florida. On or about July 29, 2004, North American received Joseph Campbell's claim for benefits payable under the terms of the life insurance policy (Doc. #4-2, Exh. A). On or about September 7, 2004, North American received a letter from Joseph Campbell's attorney demanding payment of the insurance proceeds (Doc. #4-2, Exh. B). Thereafter, on September 8, North American received a letter from the attorney representing Ceceilia M. Lee, who also intended to claim the death benefits payable under the subject life insurance policy (Doc. #4-2, Exh. C). Ms. Lee's attorney requested the appropriate documents to file a claim (*Id.*). Ceceilia Lee then filed a claimant's statement for the subject insurance proceeds on October 15, 2004 (Doc. #4-2, Exh. D).

This action was initially brought in state court on or about September 22, 2004 (*see* Doc. #1, Notice of Removal, Exh. A). Plaintiff Joseph C. Campbell sued for breach of contract against North American for failure to pay life insurance proceeds under the terms of the life insurance contract between decedent Donna Cain Campbell and North American.

North American was served with process on the state complaint on or about September 27, 2004. On October 18, 2004, North American chose to remove the case to federal court, asserting the Court's jurisdiction under the diversity provisions of 28 U.S.C. § 1332.[3]

On October 25, 2004, North American filed an answer to the removed complaint and asserted a counterclaim for interpleader and declaratory relief, wherein Counter-Defendants Ceceilia M. Lee, Jay F. Lee, Jr., J.R.T.L., a minor, and A.J.L., a minor, were interpled into this case (Doc. #4).[4] In the answer to Plaintiff's complaint, North American admits Plaintiff was the sole primary beneficiary under the subject policy of insurance, but asserts North American also received adverse and conflicting claims to the proceeds of the policy (Doc. #4, p.2). Subsequently, the Counter-Defendants filed their own counterclaims against North American for breach of contract (Docs. #8, #13), to which North American responded (Docs. #10, #14). The parties consented to the exercise of jurisdiction by a magistrate judge, and the case was referred to the undersigned by an Order of Reference dated February 18, 2005 (Doc. #17).

Whereas Plaintiff Campbell alleged North American breached the life insurance contract of Donna Cain by failing to pay him the insurance proceeds upon presentation of

---

[3] North American states the Court has subject matter jurisdiction for the counterclaim under 28 U.S.C. § 1332, which provides federal jurisdiction to cases with diversity of citizenship and amounts in controversy exceeding $75,000. None of the parties has challenged the diversity jurisdiction of the Court.

[4] Absent from the counterclaim is any reference to either the federal interpleader statute, 28 U.S.C. § 1335, or the rule of procedure permitting interpleader, Fed. R. Civ. P. 22. However, upon submission of additional briefing ordered by the Court in October 2005, and thereafter, North American has consistently referred to its interpleader action as one arising under "rule interpleader" (*see, e.g.*, Doc. #38, p. 5). Prior to April 18, 2007, North American did not meet the requirements of statutory interpleader under 28 U.S.C. § 1335, because Plaintiff had not deposited the policy proceeds into the registry of the Court.

his claim as the named beneficiary, North American asserted it had received competing claims from the additionally named counter-defendants for the same insurance proceeds. An apparent dispute arose over whether the decedent had changed the named beneficiary to her life insurance. After being sued by Campbell, North American took the additional step of removing the action to federal court and then sought the Court's judgment to declare it a disinterested stakeholder entitled to interpleader relief, including dismissal from the case, leave to deposit the contested insurance proceeds into the court registry, award of actual court costs and attorneys' fees, and permanent injunction against all the named claimants from commencing or prosecuting any other proceeding or claim against North American in any forum with respect to the insurance proceeds payable under North American's life insurance policy/contract on account of the death of Donna Cain Campbell (*see* Doc. #24).

Plaintiff Joseph Campbell moved for final summary judgment in his favor (Doc. #22), to which all the other parties responded (Docs. #29, #31, #32) in opposition. In the motion for summary judgment, Plaintiff Campbell voices strong objections to North American's request for interpleader status, as well as any award of attorneys' fees and costs. All claimants to the insurance proceeds filed objections to North American's request for attorneys' fees and costs (*see* Docs. #27, #28). As the purported change of beneficiary and the status of the insurance company as a disinterested stakeholder, which would theoretically be entitled to attorneys' fees, were heavily contested matters in the case, the Court entertained oral argument during a pretrial conference (Doc. #34) and on two other occasions (Docs. #35, #42).

Some time later, the parties, *sans* North American, participated in mediation of this matter and subsequently filed the Notice of Partial Settlement (Doc. #44-1) to which a copy of the Mediation Settlement Agreement (Doc. #44-2) was attached. The Court entered its Order dated February 3, 2006 (Doc. #48), approving the settlement agreement and finding that the dispute between Joseph Campbell, Ceceilia Lee and Jay Lee, as Guardian of J.R.T.L. and A.J.L. had been resolved. In the same Order, the Court additionally: 1) denied Campbell's motion for summary judgment as moot; 2) granted North American interpleader status without expressing opinion as to whether North American was an interested or disinterested stakeholder; 3) denied North American's motion to file claim under seal as moot; and, 4) directed North American to file a complete and accurate accounting of all asserted attorneys' fees and costs.[5]

North American filed affidavits from Joseph J. Hasman, Esq. and Bryan S. Gowdy, Esq. in support of its request for attorneys' fees. As of February 17, 2006, the claimed attorneys' fees for North American's representation amounted to $29,681 (Doc. #50). Campbell filed a response in opposition to the affidavits (Doc. #55) arguing North American was not entitled to attorneys' fees because: (1) initiation of an interpleader action is part of the normal course of business for an insurance company such as North American; and, (2) the amount sought represents "over 30% of the policy proceeds at issue," which is "clearly excessive."

**Analysis**

---

[5] North American was not dismissed from this action. On April 17, 2007, the Court granted North American permission to deposit the policy proceeds plus accrued interest into the Court's registry (Doc. #68). The deposit was made on April 25, 2007 (Doc. #69).

This interpleader action arises under Rule 22, Fed. R. Civ. P.[6], which states:

(1) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.
(2) The remedy herein provided is in addition to and in no way supersedes or limits the remedy provided by Title 28, U.S.C., §§ 1335, 1397, and 2361. Actions under those provisions shall be conducted in accordance with these rules.

Interpleader is a device that allows a stakeholder to bring an action joining two or more adverse claimants to a single fund. *In re Mandalay Shores Co-op. Housing Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994) (hereinafter "Mandalay Shores"). One purpose of interpleader is to protect a stakeholder from the possibility of defending multiple claims. *Relistar Life Ins. Co. v. Knighten*, No. 5:04CV221OC10GRJ, 2005 WL 1309411, at *3 (M.D. Fla. June 1, 2005); *see also Fulton v. Kaiser Steel Corp.*, 397 F.2d 580, 582-583 (5th Cir. 1968) ("[T]he gist of the relief sought is the avoidance of the burden of unnecessary

---

[6] Although interpleader actions in federal court may be brought under Fed. R. Civ. P. 22 or 28 U.S.C. § 1335, the primary distinction between the two are the jurisdictional prerequisites. *John Alden Life Ins. Co. v. Vanlandingham*, No. 5:04CV538OC10GRJ, 2006 WL 1529047 (M.D. Fla. May 30, 2006). North American has consistently referred to Rule 22 interpleader and insisted its entitlement to attorneys' fees is controlled by state law. (*See, e.g.*, Doc. #24, ¶ 10). However, as discussed *infra*, the Court finds that regardless of whether the issue of attorneys' fees is analyzed under state or federal law, the result is the same in this case. Further, consistent with standards applicable to both federal rule and statutory interpleader actions, attorneys' fees may be denied upon discretion of the Court. *See Life Investors Ins. Co. v. Childs,* 209 F.Supp. 1255 (N.D. Ala. 2002) (denying attorneys' fees in Rule 22 interpleader action); and *Minn. Mut. Life Ins. Co. v. Gustafson*, 415 F.Supp. 615 (N.D. Ill. 1976) (denying attorneys' fees in statutory interpleader action).

litigation or the risk of loss by the establishment of multiple liability when only a single obligation is owing."). Interpleader is liberally construed to effectuate this purpose. *Relistar*, 2005 WL 1309411, at *3 (quoting *Matter of Bohart*, 743 F.2d 313, 325 (5th Cir. 1984)).

The Court finds North American's argument supporting an award of attorneys' fees fails irrespective of consideration under federal or Florida state law. North American argues that Florida law governs the award of attorneys' fees (Doc. #24-1 at 4), citing *National Life Insurance Co. v. Southeast First National Bank of Miami*, which held that the interpleader insurance company was totally disinterested in the stake at issue and thus, entitled to attorneys' fees. 361 So. 2d. 432, 433 (Fla. 4th DCA 1978). Florida courts have consistently held that a "disinterested, innocent stakeholder" must: (1) not be responsible for creating the conflicting claims to the fund; (2) not have instituted the action for his own protection; and, (3) have sought an expeditious judicial determination of the conflicting claims. *Zuckerman v. Alter*, 758 So.2d 1172, 1173 (Fla. 4th DCA 2000) quoting *Rafter v. Miami Gables Realty, Inc.*, 428 So.2d 351, 353 (Fla. 3d DCA 1983).

North American's reliance on *National Life Insurance Company* is misplaced because the court in that case found only that the insurance company "desired to have conflicting claims judicially determined, and did nothing to cause the conflicting claims." *Nat'l Life Ins. Co.*, 361 So.2d 432 at 433. Florida case law requires an interpleader to also make a showing that he has "not instituted the action for its own protection." *Zuckerman*, 758 So.2d 1172, 1173; *see also Drummond Title Co. v. Weinroth*, 77 So.2d 606, 610 (Fla. 1955) (en banc) citing *Brown v. Marsh*, 123 So.2d 762 (Fla. 1929), and *Ray v. Travelers Ins. Co.*, 477 So.2d 634, 637 (Fla. 5th DCA 1985). Florida's Third District Court of Appeal

held that "a plaintiff in interpleader is not entitled to attorneys' fees when the interpleader action is brought *after* he has been sued by one of the defendants in the interpleader proceeding." *Rafter*, 428 So.2d 351 at 353 (emphasis in original). The *Rafter* court went on to explain that "because the [interpleader company] had waited until after it had been sued before filing its claim in interpleader, the interpleader action was one brought for [its] own protection, disentitling it to fees and costs." *Id.* at 354. *See also Brown v. Marsh*, 123 So. 762, 764 (Fla. 1929) ("Where it develops that complainant has a substantial, although not a direct, interest in the result of the litigation, his [attorney]'s fees should not be allowed from the said fund. This rule also applies where the party provokes a concursus."[7]).

In the instant matter, a dispute arose over the proceeds of a life insurance policy issued by North American. After the dispute arose, in September 2004, Plaintiff Joseph Campbell sued North American for breach of contract. North American then removed the breach of contract action to federal court, and sought interpleader. There is no question North American was not responsible for creating the conflicting claims to the life insurance policy at issue, and actively participated in the judicial proceedings to determine the policy's rightful beneficiary. However, North American instituted the interpleader action in defense of the breach of contract litigation initiated by Plaintiff Campbell. North American is not a disinterested stakeholder under Florida state law because it initiated the interpleader action for its own protection, and is thus, not entitled to attorneys' fees.

Alternatively, North American argues it is entitled to attorneys' fees under federal law. (Doc. #24-1 at 4 n.1). However, neither Fed. R. Civ. P. 22, nor the federal

---

[7] Black's Law Dictionary defines concursus as "interpleader." BLACK'S LAW DICTIONARY 287 (7th ed. 1999).

8

interpleader statute 28 U.S.C. § 1335, specifically provide for attorneys' fees or costs. Thus, there is no right for the stakeholder to recover costs and /or attorneys' fees.[8] *Metro. Life Ins. Co. v. Carter*, No. 3:04-cv-668-J-32HTS, 2005 WL 2810699, at *11 (M.D. Fla. Oct. 27, 2005) (quoting *Life Investors Ins. Co. of Am. v. Childs*, 209 F.Supp. 2d 1255, 1256 (M.D. Ala. 2002)). The determination of whether to award attorneys' fees and costs lies within the sole discretion of the court. *Id.*; *see also Mandalay Shores*, 21 F.3d 380 at 382-83; *Childs*, 209 F. Supp. 2d 1255, 1256; 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1719 (3d ed. 2001)) (citations omitted). As a general proposition, attorneys' fees and costs may be awarded to an innocent, disinterested stakeholder who brings an interpleader action. *Prudential Ins. Co. of America v. Boyd*, 781 F.2d 1494, 1497 (11th Cir. 1986). If a disinterested stakeholder is permitted to recover attorneys' fees and costs, the recovery is generally awarded from the stake itself. *Childs*, 209 F.Supp. 2d 1255 at 1256*; see also Boyd*, 781 F.2d 1494 at 1498.

In *Mandalay Shores*, the Eleventh Circuit stated at least three reasons justify an award attorneys' fees in many interpleader actions:

> First, an interpleader action often yields a cost-efficient resolution of a dispute in a single forum, rather than multiplicitous, piecemeal litigation. Second, the stakeholder in the asset often comes by the asset innocently and in no way provokes the dispute among the claimants. Third, fees for the stakeholder typically are quite minor and therefore do not greatly diminish the value of the asset.

*Mandalay Shores*, 21 F.3d 380 at 383.

---

[8]The Northern District of Illinois found that "it can be argued that federal courts are precluded from awarding fees in statutory interpleader actions" because 28 U.S.C. § 1335 "does not authorize awarding of fees." *Minn. Mut. Life Ins. Co. v. Gustafson*, 415 F.Supp. 615, 619 n.4 (N.D. Ill. 1976).

The Eleventh Circuit has also stated that insurance companies are not "innocent stakeholders who unwittingly come into possession of a disputed asset." *Mandalay Shores* 21 F.3d 380 at 383; *see also Carter*, 2005 WL 2810699, at *11 (denying attorneys' fees, finding interpleader insurance companies "not the paradigm innocent stakeholders that find themselves by happenstance in the midst of a morass between adversaries"). Other courts have similarly held that "attorneys' fees should not be granted to the stakeholder as a matter of course in interpleader actions concerning the proceeds of insurance policies." *Minn. Mut. Life Ins. Co. v. Gustafson*, 415 F.Supp. 615, 618 (N.D. Ill. 1976) citing *Travelers' Indem. Co. v. Israel*, 354 F.2d 488 (2nd Cir. 1965).

Generally, this Court agrees that "the stakeholder, as well as the claimants, is benefitted by an interpleader action because it will be relieved of vexation and the expense of resisting a multiplicity of lawsuits in widely separate jurisdictions, will avoid erroneous election and will be discharged from all liability on the policy involved." *Gustafson*, 415 F.Supp. 615 at 618 (citing *Nat'l Life & Accident Ins. Co. v. Bruce*, 309 F.Supp. 1314 (W.D. Mo. 1970), and *Fidelity & Cas. Co. of N.Y. v. Levic*, 22 F.Supp. 131 (W.D. Pa. 1963)). However, the Court also agrees that "the chief beneficiary of an interpleader action is the insurance company." *Gustafson*, 415 F.Supp. 615 at 618.

Throughout this action, the Court has declined to find North American was a disinterested, innocent stakeholder. (*See, e.g.,* Doc. #48). The interpleader action in this case was filed by North American in response to a breach of contract action brought by the named beneficiary to the life insurance contract at issue. Here, North American did assert threats of multiple litigation from claimants whose interests were adverse and who presented conflicting claims to the life insurance proceeds of North American's insured,

Donna Cain (Campbell).  (Doc. #4, p.6).  Thus, the Court granted North American interpleader status.  However, as resolution of the interpleader action, as well as the breach of contract action, were clearly in North American's own self interest, the Court declined to find North American as an innocent or disinterested stakeholder.  Therefore, the Court declines to use its discretion to award North American fees as a disinterested, innocent stakeholder now.

Where a court does find an interpleader to be a disinterested, innocent stakeholder, any fee award should be made "consistent with equitable principles."  *Harris Corp. v. Dunn*, No. 6:05-cv-1388-ORL-19DAB, 2006 WL 1275062, at *6  (M.D. Fla. May 5, 2006).  In such a situation, "the usual practice is to tax the costs and fees against the interpleader fund." *Boyd*, 781 F.2d 1494 at 1498.  Furthermore, "the fees for the stakeholder are typically quite minor and therefore do not greatly diminish the value of the asset."  *Mandalay Shores*, 21 F.3d 380 at 383; *see also Childs*, 209 F.Supp. 2d 1255 at 1256 (finding fees over two percent of the total stake were not "quite minor."); *Primerica Life Ins. Co. v. Walden*, 170 F.Supp. 2d 1195, 1199-1200 (S.D. Ala. 2001) (finding less than one percent of total stake to be reasonable.); and *Unum Life In. Co. of Am. v. Kaleo*, Case No. 6:05CV544ORL-22DAB, 2006 WL 1517257, at *3 (M.D. Fla. May 24, 2006) (finding an award of $6,698 from a $40,000 fund would "greatly diminish the value of the asset.").

Even if the Court were to find that North American was eligible for attorneys' fees, North American seeks $29,681 in attorneys' fees from a total stake of $100,000.  This

amount, at nearly 30% of the total stake, far exceeds the "quite minor" awards envisioned by the Eleventh Circuit as it would greatly diminish the value of the asset.[9]

Additionally, this Court finds that attorneys' fees are not warranted because the costs at issue arose out of North American's normal course of business. As previously stated, the Eleventh Circuit has held that, within the court's discretion, attorneys' fees may be awarded in an interpleader action. *Mandalay Shores*, 21 F.3d 380 at 382-83. However, the *Mandalay Shores* court also held in "certain circumstances" attorneys' fees are not warranted, such as when an interpleader claim "arises out of the normal course of business." *Id.*[10] The normal-course-of-business standard is typically applied to insurance companies and denies such parties attorneys' fees and cost. *Id.* As the *Mandalay Shores* court explained:

> The principle behind the normal-course-of-business standard is simple: an insurance company, for example, avails itself of interpleader to resolve disputed claims to insurance proceeds-disputes that arise with some modicum of regularity. In a sense, the insurance company will use interpleader as a tool to allocate proceeds and avoid further liability. As the costs of these occasional interpleader actions are foreseeable, the insurance company easily may allocate the costs of these suits to its customers. Unlike innocent stakeholders who unwittingly come into possession of a disputed

---

[9] Florida law similarly requires where an award is made "attorney's fees should be limited to a reasonable fee for necessary services." *Brown v. Marsh*, 123 So. 762 at 764. This Court finds North American's proposed fees to be unreasonable under either standard.

[10] Florida courts have also acknowledged a "normal course of business" exception to awarding attorneys' fees. *See Ray v. Travelers Ins. Co.*, 477 So.2d 634 at 637, quoting *Kurz v. N.Y. Life Ins. Co.*, 168 So.2d 564, 568 (Fla. 1st DCA 1964) ("The fact that there are conflicting claims to the proceeds of an insurance policy. . . will not operate to relieve the insurer from prompt performance of its obligation to pay the proceeds to the rightful beneficiary, nor will it be permitted to relieve that obligation and be awarded a fee for the services of its attorney by resorting to interpleader on the theory that it may be put to vexatious suits by contesting claimants.").

> asset, an insurance company can plan for interpleader as a regular cost of business and, therefore, is undeserving of a fee award.

*Mandalay Shores*, 21 F.3d 380 at 383.

The Court is not persuaded by North American's argument that *Mandalay Shores* does not apply to this case. Although the *Mandalay Shores* case involved a dispute as to the entitlement of a bank seeking attorneys' fees as a putative innocent stakeholder in an interpleader action, rather than an insurance company, the court's discussion on attorney fee awards is instructive as well as persuasive. *See id.* This Court finds, as other district courts have, that the Eleventh Circuit in *Mandalay Shores*, "instructed courts that the 'normal course of business exception' can trump the three standard reasons for awarding attorney's fees." *Childs*, 209 F.Supp. 2d 1255 at 1256-57 (denying attorneys' fees after finding "nothing in the record to indicate that [the interpleader was] anything other than an insurance company in a routine dispute over the proceeds of a life insurance policy"). The court in *Metropolitan Life* used the normal course of business exception as one of two reasons to deny an award of attorneys' fees. 2005 WL 2810699, at *11. In *Prudential Property & Casualty Co. v. Baton Rouge Bank & Trust Co.*, the court noted that the chief beneficiary of an interpleader action is the insurance company. 537 F.Supp. 1147, 1150 (M.D. Ga. 1982) (internal citations omitted). Quoting from *Gustafson*, 415 F.Supp. 615, 618-19, the *Baton Rouge Bank & Trust* court agreed it seems "unreasonable to award an insurance company fees for bringing an action which is primarily in its own self-interest." 537 F.Supp 1147 at 1150.[11] Furthermore, risk spreading is a basic tenet of civil justice in

---

[11] In *Baton Rouge Bank & Trust Co.*, the court ultimately awarded some of the requested attorneys' fees to the interpleader insurance company, finding that it was necessary for
(continued...)

13

our system, and "an insurance company is in a unique position to carry the cost of attorneys' fee as a regular part of doing business." *Kaleo*, 2006 WL 1577257, at *3 (M.D. Fla. 2006).

In the instant action, the interpleader, North American, is an insurance company seeking attorneys' fees expended as a result of the dispute which arose over the proceeds of a life insurance policy issued and paid by North American.  The Eleventh Circuit has made clear that where disputes over payments of proceeds arise in the normal course of business and the overall costs of handling these disputes may reasonably be taken into account as a cost of doing business, an interpleader insurance company is not entitled to attorneys' fees.  *Mandalay Shores*, 21 F.3d 380 at 382-84.  As were the courts in *Baton Rouge Bank & Trust* and *Gustafson*, this Court is "not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business to (the claimant) by bringing an action for interpleader."  *Gustafson*, 415 F.Supp. 615, 618 (quoting *Travelers' Indem. Co. v. Israel*, 354 F.2d 488, 490 (2nd Cir. 1965)).  The Court finds no evidence that the instant matter is unique among matters routinely handled by North American, or is otherwise not in its normal course of business.  Thus, this Court declines to use its discretion to award attorneys' fees where none are warranted under the law of the Eleventh Circuit.

---

[11](...continued)
Prudential to remain in the case to assist the Court in its determination on the merits.  537 F.Supp 1147 at 1151-52.  Such reasoning does not apply on the facts of this case.

Therefore, Defendant/Counter-Plaintiff North American Company for Life and Health Insurance's request for attorneys' fees is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of July, 2007.

Copies to all counsel of record
and *pro se* parties, if any

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge